**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 15-CR-15 |
| v. | (JUDGE CAPUTO) |
| TYRONE GREENE, | |
| Defendant. | |

**MEMORANDUM**

Before me are three (3) motions to suppress filed by Defendant Tyrone Greene. (Docs. 75, 77, 79). For the reasons that follow, I will deny the motions.

**I. Background**

On November 20, 2014, at approximately 9:15 p.m., Officer Mark Stefanowicz of the Hanover Township Police Department observed a white van allegedly traveling without its headlights or taillights activated. (Doc. 90, at 53-54). As a result, Officer Stefanowicz initiated a traffic stop of the van on Knox Street in Hanover Township. *Id*. at 58. He approached the driver's side of the vehicle and asked the driver, Jennifer Manley, for her driver's license, vehicle registration, and proof of insurance. *Id*. at 56. Ms. Manley did not produce any of those documents; instead, she handed Officer Stefanowicz a New York state benefits card and a Hertz rental car agreement. *Id.* The rental car agreement was in the name of "Kevin Hurtudo-Moreno." *Id.* at 57. The front seat passenger, Defendant Tyrone Greene, stated that Mr. Hurtudo-Moreno was his brother. *Id*. The rental agreement did not list any other authorized drivers. *Id.*

As Officer Stefanowicz was speaking with the occupants of the van, he allegedly detected what he recognized to be an odor of unburnt marijuana in the vehicle. *Id.* at 58-59. Moreover, according to the Officer, Mr. Greene

> exhibited a number of suspicious behaviors, including, but not limited to, the following: repeatedly seeking to leave, and attempting to leave, the scene of the

> traffic stop and enter a residence located at 29 Knox Street, purportedly to bring food inside, despite being advised by Officer Stefanowicz that he was required to stay; initially standing up and then sitting back down in the passenger seat when ordered out of the vehicle; and standing up and reaching for his waistband, as though trying to conceal something on his person.

(Doc. 83, at 3; *see also* doc. 90, at 59-60).

In light of the above, Officer Stefanowicz conducted a "*Terry* frisk" of Mr. Greene, and located a bag of marijuana. (Doc. 90, at 63-65). Having placed Mr. Greene under arrest for possession of marijuana, Officer Stefanowicz attempted to turn Mr. Greene around to conduct a further search but apparently noticed that Mr. Greene was bending over and walking "in a manner as if to conceal something on his person." (Doc. 83, at 4; Doc. 90, at 65-66; 69). Mr. Greene then vomited on the ground. (Doc. 90, at 16). He was told to remain on the sidewalk with an officer who had responded to the scene. *Id*. at 67. In the meantime, Officer Stefanowicz conducted a search of the van and located .40 caliber bullets in the glove box. *Id*. at 68. The Officer also located .40 caliber bullets in Ms. Manley's purse, along with a marijuana "blunt." *Id*.

When Mr. Greene was being escorted to a police car, he apparently continued to walk "in a strange, unusual manner, consistent with attempting to conceal something in his clothing or on his person." (Doc. 83, at 6). Mr. Greene was then searched by an assisting officer, who located a handgun on Mr. Greene's person. (Doc. 90, at 70). Subsequent investigation revealed that the weapon - a Beretta, Model 90, .40 caliber handgun, serial number "TY00129" - was reported stolen in New York state and that Mr. Greene is a previously convicted felon who is prohibited from possessing firearms and ammunition. (Doc. 83, at 35-36). Mr. Greene was also found to be in possession of $4,000. (Doc. 90, at 74).

As a result of the incident, Ms. Manley was charged with driving without a license, driving after dark without lights on, and possession of marijuana. (Doc. 83-1).

2

On February 3, 2015, a federal grand jury returned an indictment charging Mr. Greene with Count 1 - Convicted Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. 922 § (g)(1); and Count 2 - Possession of Marijuana, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 844(a). (Doc. 1). The indictment also includes a forfeiture allegation. *Id*.

In light of the foregoing, Mr. Greene has filed three pretrial motions, including (1) "Motion to Suppress Stop of Vehicle" (Doc. 75); (2) "Motion to Suppress Seizure of Defendant" (Doc. 77); and (3) "Motion to Suppress Statements of Defendant." (Doc. 79). A hearing on the motion was held on April 10, 2017. The motions have been fully briefed and are now ripe for disposition. I will address each in turn.

## II. Legal Standard

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV; *see also* 48 U.S.C. § 1561 ("The right to be secure against unreasonable searches and seizures shall not be violated."). "Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an exception applies." *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)). "[U]nder the exception to the warrant requirement established in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court has held that police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot even if the officer lacks probable cause." *United States v. Mathurin*, 561 F.3d 170, 173-74 (3d Cir. 2009) (internal quotation marks omitted) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581(1989)).

The Third Circuit has held that "the *Terry* reasonable suspicion standard applies to

routine traffic stops" based on suspected traffic offenses. *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006). As the Supreme Court has found, "in a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S. Ct. 781, 784 (2009).

As a general rule, the burden of proof is on a defendant who seeks to suppress evidence. *Unites States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). However, once the defendant has established a basis for his motion, such as establishing that the search or seizure was conducted without a warrant, "the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2002). The applicable burden of proof is by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 178 n.14, 94 S. Ct. 988, 996 (1974).

### III. Discussion

**1.      Motion to Suppress the Traffic Stop (Doc. 75)**

Mr. Greene's first motion seeks to suppress the traffic stop of the van by Officer Stefanowicz. Mr. Greene argues that "the seizure of the vehicle was unlawful as it was conducted without articulable and reasonable suspicion that criminal activity was afoot." (Doc. 75, at 2). Mr. Greene believes that Officer Stefanowicz stopped "the vehicle on an unverified hunch of criminal activity," and the failure to use headlights and taillights was a mere pretext to initiate the stop. (Doc. 76, at 2). Attached to the motion is a "Verification in Support of Motion to Suppress" signed by Mr. Greene, which argues that "[t]he officer followed the vehicle for far longer than would have been safe if the headlights and taillights were not operating." (Doc. 75-2, at 1).

"It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997). "[A]ny technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006).

Here, I find that the vehicle in which Mr. Greene was a passenger was lawfully stopped for traveling without its headlights or taillights illuminated in violation of § 4302 of the Pennsylvania Vehicle Code. 75 Pa.C.S.A. § 4302(a).[1] The driver was immediately issued an appropriate traffic citation. (Doc. 83-1). The violation was also contemporaneously recorded in the Officer's report and the probable cause affidavit. *Id*. Officer Stefanowicz testified that the traffic code violation prompted the initial stop, and I credit that testimony against the testimony of Mr. Greene, which had no indicia of credibility; his answers were often unresponsive,[2] evasive,[3] and incoherent.[4] In addition, Mr. Greene's open-court admission of possessing marijuana in the vehicle, (Doc. 90, at 39), the recovery of a firearm on Mr. Greene's person *id*. at 117, both of which are criminal offenses, as well as his previous felony convictions for similar conduct, (Doc. 83-1, at 5), provide a strong motivation to

---

[1] Mr. Greene argues "the officer followed the vehicle for far longer than would have been safe if the headlights and taillights were not operating." (Doc. 75-2). However, Officer Stefanowicz credibly explained that it first "it took [him] a little bit to get up to the vehicle," *id.* at 52, and then he did not initiate a stop because "[o]n the right hand side there's no area to pull over safely on South Main Street between West Saint Mary's Road until you get to almost Star Gas Station." *Id.* at 53. Moreover, because the street was on "a very steep incline," it was "unsafe to make a traffic stop in that area[.]" *Id.* at 52-53.

[2] *See, e.g.*, Doc. 90, at 25; 40.

[3] *See, e.g.*, *id*. at 90, at 21-22; 23-24; 26.

[4] *See, e.g.*, *id*. at 18-19.

5

prevaricate to undermine the legality of the traffic stop.

Mr. Greene's argument that the vehicle lights were illuminated is further undermined by his initial motion to suppress (Doc. 54), filed *pro se*, which did not call into question the Officer's assertions that the car's headlights and taillights were not activated. Nowhere did Mr. Greene allege in his original motion that the lights were in fact on. Only now, nearly a year after he filed his initial motion to suppress and two years after he was indicted, does Mr. Greene claim that the vehicle lights were in fact illuminated, calling into question the legality of the traffic stop. During the hearing, however, Mr. Greene had no credible explanation as to why he failed to raise this crucial argument in his original motion to suppress. (Doc. 90, at 20-22).

Moreover, Mr. Greene's argument that the traffic stop was unlawful because of the Officer's alleged "unverified hunch" that the vehicle was involved in drug trafficking finds no support in applicable precedent. As the Supreme Court held in *Whren v. United States*, 517 U.S. 806, 811-13 (1996), an allegedly pretextual traffic stop is valid because an automobile may be stopped "where the police have probable cause to believe that a traffic violation occurred," *id*. at 810, and the subjective intentions of the police are irrelevant. *Id*. at 813. *See also United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011) ("Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant."). Thus, I find that the traffic stop at issue was lawful under the Fourth Amendment. *See Delfin-Colina*, 464 F.3d at 396-99.

**2.    Motion to Suppress the Seizure of Defendant Tyrone Greene (Doc. 77)**

Mr. Greene next argues that his seizure by Officer Stefanowicz was unlawful and should be suppressed. Mr. Greene raises several arguments regarding his seizure, contending that his rights were violated when: (a) the police refused to allow him to continue

to his destination; (b) the police subjected him to a pat-down; and (c) the police exceeded the scope of a lawful pat-down. Mr. Greene also argues that (d) the seizure of the firearm from his person should be suppressed under the doctrine of "fruit of the poisonous tree." (Doc. 78, at 6-9). I will address each argument in turn.

### a. Odor of Marijuana as the Justification for the Seizure

Mr. Greene first asserts that his rights were violated when the police refused to allow him to leave the scene of the traffic stop to enter a nearby residence. It is well-established, however, that, "[d]uring a routine traffic stop, police officers 'ha[ve] the authority and duty to control the vehicle and its occupants, at least for a brief period of time.'" *United States v. Richardson*, 2012, WL 5691026, *4 (3d Cir. 2012). Moreover, after a lawful traffic stop, "an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003).

Here, Officer Stefanowicz testified that he detected what he recognized to be the odor of unburnt marijuana emanating from the vehicle. (Doc. 90, at 58-59). Mr. Greene concedes that "[l]ike plain view, 'plain smell' can provide probable cause to justify a search where an officer smells a substance that is immediately apparent to him to be the odor of contraband." (Doc. 78, at 6) (citation omitted). He argues, however, that "the issue is whether this officer can credibly be said to have smelled marijuana," *id.*, in light of a 2004 study which discusses problems with the accuracy of marijuana odor perception in humans. (*See* Doc. 77-2, Def.'s Ex. 2 - Marijuana Odor Perception Study).

"It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (citation omitted); *see also United States v.*

7

*McMillion*, 472 F. App'x 138, 141 (3d Cir. 2012); *United States v. Brown*, 261 F. App'x 371 373 (3d Cir. 2008). Here, the totality of the circumstances sufficiently particularized the odor to justify the Officer's actions. This case presents more than a diffused or undistinguished marijuana odor; the traffic stop did not occur in a crowded area. Rather, the smell emanated from a confined space and was detected as coming from that space. Officer Stefanowicz credibly testified that he smelled an identifiable marijuana odor upon approaching the vehicle. This suspicion was corroborated by Mr. Greene's own testimony where he admitted that the Officer mentioned the odor of marijuana immediately "when [Mr. Greene] opened the door to exit" the vehicle on the scene. (Doc 90, at 31; 39-40).

Officer Stefanowicz is an experienced, well-trained drug investigator who has made numerous marijuana arrests, encountered marijuana on the job on numerous occasions, served as an affiant for numerous marijuana prosecutions, made numerous purchases of marijuana in an undercover capacity, and presently serves in a supervisory capacity for the Luzerne County Drug Task Force. (Doc. 90, at 43-47). He has testified as an expert in magistrate court proceedings in Lackawanna and Luzerne counties and during various federal court hearings. (Doc. 90, at 47). Moreover, at the hearing in the instant case, the government moved to offer the Officer as an expert in street-level narcotics and, following *voir dire*, Mr. Greene did not oppose that motion. *Id*. at 49. Finally, as Officer Stefanowicz testified, he has received extensive training pertaining specifically to the olfactory identification of different amounts of marijuana, burnt and unburnt. *Id.* at 45.

Thus, I find that the odor of marijuana emanating from the vehicle, identified by an officer with the requisite skills and experience in narcotics investigations, entitled the officer to lawfully seize the defendant. *See United States v. Ushery*, 400 Fed. App'x 674 (3d Cir. 2010) (odor of "burnt" marijuana coming from vehicle provided probable cause for search);

*see also United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004).

### b. Justification for the Pat-down

Mr. Greene next asserts that Officer Stefanowicz violated his rights by subjecting him to a pat-down in the absence of circumstances suggesting that Mr. Greene was armed and dangerous. Mr. Greene concedes that an officer is justified in briefly patting down a suspect when a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (Doc. 78, at 7 (quoting *United States v. Yamba*, 506 F.3d 251, 255 (3rd Cir. 2007))). Mr. Greene argues, however, that, although an officer need not be absolutely certain that someone is armed and dangerous, the officer must be able to point to specific and articulable facts that justify such an intrusion. *Id*. Here, according to Mr. Greene, the Affidavit of Probable Cause is "devoid of any specific and articulable facts that could be relied upon to conduct such a pat-down. While there is a reference to a prior conviction, the Affidavit provides the information about Mr. Greene's prior history as an afterthought related to the arrest, not as anything that formed the basis for the pat-down." *Id*. (citing Def.'s. Ex. 4 - Criminal Complaint and Affidavit of Probable Cause).

The government, however, argues that

> [Mr.] Greene exhibited a number of suspicious behaviors which would justify a *Terry* frisk or a pat down of his person, including: repeatedly seeking to leave, and attempting to leave, the scene of the traffic stop and enter a nearby residence, purportedly to bring food inside, despite being advised by Officer Stefanowicz that he was required to stay; initially standing up and then sitting back down in the passenger seat when ordered out of the vehicle; and standing up and reaching for his waistband, as though attempting to conceal something on his person.

(Doc. 83, at 3).

"After a traffic stop, an officer may frisk a person whom he has ordered out of the car if he has a reasonable suspicion that the person is armed." *United States v. Thach*, 411 F.

App'x 485, 489 (3d Cir. 2011) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111-13, 98 S.Ct. 330 (1977) (per curiam)). "Reasonable suspicion is formed when, under the totality of the circumstances, the officer reasonably believ[es] that his safety [is] threatened." *Id.* (citing *Terry*, 392 U.S. at 27). "The totality of the circumstances includes an officer's 'knowledge, experience, and common sense about human behavior.'" *Id.* (quoting *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification." *Givan*, 320 F.3d at 458 (citation omitted). Moreover, "in connection with a lawful traffic stop of an automobile, when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others." *United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998).

Here, I find that Mr. Greene's suspicious movement inside the vehicle, the nature of the neighborhood, and the Officer's detection of a strong odor of illegal drugs were sufficient to establish reasonable suspicion to conduct a pat-down. Officer Stefanowicz credibly testified that "[t]he defendant was . . . moving around continuously in the vehicle. He had . . . food boxes on his lap. And his hands would be above them and his hands go under them." (Doc. 90, at 59; *see also id.* at 96). At that time, the Officer already knew that unlawful activity was occurring in the vehicle because of the odor of marijuana. Moreover, he testified that he ordered Mr. Greene to "keep [the] hands right where I can see them because I mean it wasn't the most well lit area on Knox Street," *id.*, which is known for "narcotics trafficking."

*Id.* at 97; 84-85.[5] Finally, Mr. Greene "was very adamant about getting out of the vehicle," and, as the Officer testified, "at this point [in] 2014, I've had thousands of traffic stops, and I can read body language. There was something about him he wanted to get out of that vehicle." *Id*. at 62.

When the Officer asked Mr. Greene to step out of the vehicle, Mr. Greene again engaged in suspicious behavior. "He initially looked like he was going to take his first step out, and then he put his foot back in the vehicle. So, like, he was going to get out, hesitated and went back, then put his foot back in the vehicle and sat there." *Id*. at 63. When Mr. Greene did eventually step out of the vehicle, as Officer Stefanowicz testified, Mr. Greene "turned his back to me, his right hand went right down towards his waist. So my right hand was on his forearm. I said, put your hands on top on the vehicle, don't reach down to your waist." *Id.* at 63-64.

Thus, the totality of the circumstances gave rise to a reasonable, articulable, and particularized suspicion that Mr. Greene posed a danger to the Officer or the public such that a brief pat-down search of the suspect was justified. *See United States v. Calloway*, 571 Fed.Appx. 131, 136-37 (3d Cir. 2014) (finding that justification for a pat-down existed where a suspect made furtive movements consistent with attempting to conceal something); *Moorefield*, 111 F.3d at 14 (holding that "furtive hand movements and refusal to obey the officer's orders constituted suspicious behavior," which "embodied the kind of specific, articulable facts that *Terry* contemplates, and therefore warranted a pat-down search for weapons") (citation omitted).

---

[5] In fact, Officer Stefanowicz immediately learned that the occupants of the vehicle were heading to "29 Knox Street," which, as the Officer testified, is "a residence of a person in Hanover who is involved in narcotics trafficking or has been known to go there." (Doc. 90, at 75-76).

11

### c.     Justification for the Scope of the Pat-down

Mr. Greene next argues that, even if the pat-down was justified, its scope exceeded what is permissible under the Fourth Amendment. Mr. Greene contends that the purpose of a protective pat-down is limited to a search for weapons and "given the small amount of marijuana, it is unlikely that it would have felt like a weapon . . . . It would have been immediately apparent that the small bump on waistline was not a weapon." (Doc. 78, at 8).

Based on Officer Stefanowicz's testimony and his extensive experience and expertise, I find that he did not exceed the permissible scope of the pat-down when he seized the narcotics found in Mr. Greene's pocket. As the Supreme Court has held, "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. . . ." *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130 (1993). An officer "is allowed to slide or manipulate an object in a suspect's pocket, consistent with a routine frisk, until the officer is able reasonably to eliminate the possibility that the object is a weapon." *Yamba*, 506 F.3d at 259. "If, before that point, the officer develops probable cause to believe, given his training and experience, that an object is contraband, he may lawfully perform a more intrusive search [,]" and will be justified in seizing any contraband he discovers. *Id. See also Dickerson*, 508 U.S. at 375–376, 113 S.Ct. 2130.

Officer Stefanowicz immediately recognized the contraband by "plain feel" because throughout his twenty-seven-year long career he had undoubtedly felt similar objects in the past while conducting "over 400 controlled purchases of controlled substances," *id.* at 44, "over 2000, 2500 plus" narcotics investigations, *id*. at 44-45, and in the specialized training he has received by the "[U.S. Drug Enforcement Administration], [Federal Bureau of

12

Investigation], [Bureau of Alcohol, Tobacco, Firearms and Explosives], [U.S. Marshals Service], Pennsylvania Attorney General's Office, Pennsylvania National Guard Counter Drug Program and different other agencies within and outside of Pennsylvania." *Id*. at 43. As the Officer credibly testified, "when I felt it, I knew it was suspected marijuana to me . . . . I didn't have to manipulate it at all." (Doc. 90, at 65). *See United States v. Goode*, 486 Fed.Appx 261, 263-64 (3d Cir. 2012) (noting that officer permissibly relied on personal experience and training to identify the object in defendant's pocket)*; United States v. Johnson*, 452 F. App'x 219, 226 (3d Cir. 2011) (same)*; Yamba,* 506 F.3d at 259 (stating that the proper question "is not the immediacy and certainty with which an officer knows an object to be contraband or the amount of manipulation required to acquire that knowledge but rather what the officer believes the object is by the time he concludes that it is not a weapon").

### d. Fruit of the Poisonous Tree

Finally, Mr. Greene argues that because the above-mentioned events (the seizure of vehicle, the seizure of Mr. Greene after the stop, the pat-down of Mr. Greene, and the impermissible scope of the pat-down) were all conducted in violation of Mr. Greene's Fourth Amendment rights, the eventual arrest of Mr. Greene was also unlawful. (Doc. 78, at 9). Thus, he argues, the discovery of the gun in the search incident to the unlawful arrest must be excluded as the "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407 (1963).

However, as I have already found, no Fourth Amendment violations occurred during the entirety of the incident.[6]

---

[6] Regardless, the firearm seized from Mr. Greene would be admissible pursuant to the "inevitable discovery" doctrine, *Nix v. Williams*, 467 U.S. 431, 441, 104 S. Ct. 2501, 2507

13

### 3. Motion to Suppress Defendant's Statements (Doc. 79)

Finally, Mr. Greene seeks to suppress statements that he made to the police following his arrest. The statements at issue are set forth in a police report, which reads as follows:

> While in custody, Greene asked if Manley was going to get into trouble for the bullets in her purse and that he would give a statement that the gun and bullets were his and that she had no knowledge or anything to do with the bullets. When asked about the $4,000.00 ($3,000.00 inside coat pocket and $1,000.00 in his wallet), Greene stated that he is a "rapper" and that his probation officer can confirm that he should have that type of money. Greene and Manley were both asked if they would consent to the search of the residence at 29 Knox Street, Hanover Township. Manley's story changed several times stating that she hasn't been at the address for two weeks and left her key in New York and that she is not on the lease but does have clothes at said location. Greene informed police that his brother "Kizler" lives there and that he only stays there when visiting and won't consent to any search. When asked his brother's name, Greene stated that I can ask his brother when I speak to him. Manley had informed Police that she gave Greene a courtesy ride[.]

(Def.'s Ex. 3 - Police Report).

Mr. Greene argues that there is "no indication that he was read any *Miranda* warnings before or after being placed into custody." (Doc. 80, at 3). He contends that "the incident report leaves it unclear as to how these statements were elicited," and that a hearing is required to ascertain "whether the statements were made in response to interrogation." *Id.* at 4. There is a dispute as to whether or not the above-cited statements were actually made. However, during the hearing, Mr. Greene asked that I assume for the purposes of the instant motion that the above-cited statements were made, but that "at trial [Mr. Greene's counsel] may very well argue there were no statements." (Doc. 90, at 122).

---

(1984) because "the police, following routine procedures, would inevitably have uncovered the evidence." *United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998). The Hanover Township Police Department has procedures which require that a suspect first be searched prior to being placed in, and transported by, a Hanover Township police vehicle. (Doc. 90, at 71-72).

14

As the Supreme Court held in *Miranda v. Arizona,* "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). Such *Miranda* safeguards are required when a suspect is "(1) 'in custody' and (2) subject to 'interrogation' by the Government." *Id*. at 444, 86 S.Ct. 1602; *see also United States v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999).

A suspect is in custody when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714 (1977) (per curiam)). There is no dispute that Mr. Greene was in custody at the time he made the incriminating statements. The issue, however, is whether Mr. Greene was subjected to an interrogation for the purposes of the Fifth Amendment.

An "interrogation" has been defined as "(a) conduct intentionally designed to evoke a confession, as well as (b) any conduct an officer should reasonably have foreseen would elicit an inculpatory response." *United States v. Bonner*, 469 Fed.Appx. 119, 126 (3d Cir. 2012) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689 (1980). The term "interrogation" includes express questioning and any words or actions on the part of the police "that the police should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301. Consequently, a police officer cannot be held responsible for an unforeseeable statement by the suspect. *Id*. at 301-02.

A statement is involuntary when the suspect's "will [is] overborne in such a way as to render his confession the product of coercion." *Arizona v. Fulimante*, 499 U.S. 279, 288, 111 S.Ct. 1246 (1991). Whether a statement is voluntarily made is determined from "'the totality

15

of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047 (1973)). The government has the burden of establishing the voluntariness of any statements given. *Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir. 1986).

Here, the circumstances, as gleaned through Officer Stefanowicz's credible testimony, establish that Mr. Greene's statements were unsolicited and voluntary. Mr. Greene initiated the conversation by asking whether his girlfriend, Ms. Manley, was going to get into trouble. (Doc. 90, at 73). Mr. Greene then followed up his question with additional, unsolicited statements about taking the blame for the bullets found in Ms. Manley's purse. *Id*. There is no evidence of coercion or that Officer Stefanowicz engaged in any type of unlawful pressure or tactics. Instead, Mr. Greene's statements were made in the absence of any type of interrogation and no threats, promises, or compulsion prompted those statements. As the Supreme Court has held, an officer is not prohibited from "merely listening to [Defendant's] voluntary, volunteered statements and using them against him at trial." *Edwards v. Arizona*, 451 U.S. 477, 485 (1981). As Officer Stefanowicz testified, he "had no reason to talk to the defendant or speak to him about anything related to the actual crimes[.]" *Id.* at 73; *see also id.* at 104-06. I credit that testimony over Mr. Greene's unconvincing denials. *Id*. at 18-19. *Miranda* does not reach a situation such as the present one, where the statements were unsolicited, spontaneous, and freely made. *See Innis*, 446 U.S. at 300-302.

Thus, Mr. Greene's motion to suppress the statements at issue will be denied.

## IV. Conclusion

For the foregoing reasons, I will deny Mr. Greene's "Motion to Suppress Stop of

Vehicle" (Doc. 75); "Motion to Suppress Seizure of Defendant" (Doc. 77); and "Motion to Suppress Statements of Defendant." (Doc. 79).

An appropriate Order follows.

May 18, 2017 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge